IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| DENNIS A. ORR, and PATRICK SMRZ, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. CV06-53-S-BLW |
| vs. | ) ) | **INITIAL REVIEW ORDER** |
| APRIL DAWSON, KATIE HALL, RANDY BLADES, STEVE FEASTER CARL BOYER, C. DEPPEN, TERRI ROSENTHAL, PAM SONNEN, et al., | ) ) ) ) ) | |
| Defendants. | ) ) | |

Pending before the Court is the review of Plaintiffs' Amended Prisoner Civil Rights Complaint (Complaint) to determine whether the allegations of the Complaint are subject to summary dismissal under 28 U.S.C. § 1915.  The following motions were also filed by Plaintiffs: (1) Plaintiff Orr's Motion to Proceed *in Forma Pauperis* (Docket Nos. 1, 21); (2) Plaintiff Nelson's Motion to Proceed *in Forma Pauperis* (Docket No. 3); (3) Plaintiff Smrz' Motion to Proceed *in Forma Pauperis* (Docket No. 5); (4) Plaintiffs' Motion to Certify Class (Docket Nos. 9, 20); (5) Plaintiffs' Motion to Create Copying Account (Docket No. 10); (6) Plaintiffs' Motion to Provide Copies (Docket No. 15); and (7) Plaintiffs' Motion to Stay (Docket No. 18).

Having carefully reviewed the record, the Court has determined that Plaintiffs' Complaint states cognizable individual claims under the Eighth Amendment.

**ORDER  1**

Accordingly, Plaintiffs are only authorized to proceed with the Eighth Amendment claims as set forth below. The Court will also grant Plaintiffs' requests for *in forma pauperis* filing status, but the request for class certification is denied.

## BACKGROUND

Plaintiffs Orr and Smrz are inmates in the custody of the Idaho Department of Correction (IDOC). They are presently incarcerated at the Idaho State Correctional Institution (ISCI). Plaintiffs filed this lawsuit against the following Defendants: (1) IDOC Director Tom Beauclair, (2) Prison Division Administrator Pam Sonnen, (3) Deputy Division Administrator Jeff Zmuda, (4) Warden Randy Blades, (5) Food Services Manager Steve Feaster, (6) Dietary Service Manager Katie Hall, (7) Food Service Officer Carl Boyer, (8) Food Service Officer C. Deppen, (9) Administrative Support Manager Terri Rosenthal, (10) Grant/Contract Officer Tammy Majors, and (11) April Dawson, M.D., an employee of Correctional Medical Services (CMS). *Complaint*, p. 4-6.

Plaintiffs also listed "all others similarly situated" below their names in the caption of the Complaint. *Complaint*, p. 1. The Complaint provides the names of a number of inmates who "were incarcerated at ISCI during the events described in this complaint." *Id.*, p. 2.

Plaintiffs allege that Defendants have violated their rights under the Eighth Amendment by failing to provide well-balanced meals, containing sufficient nutritional value to preserve their health. Plaintiffs also allege that meals are prepared and served

**ORDER 2**

under unsanitary conditions, presenting a danger to their health.  *Complaint*, p. 7.  They

further allege that the fruit served to inmates is spoiled thirty percent of the time, and the

food portions were reduced after the federal court entered an order preserving the

population cap at ISCI.  Plaintiffs also claim that medically prescribed diets for inmates

are not being followed.  *Id*.

Plaintiffs further allege that they are being denied their due process rights to retain

property that they purchased while incarcerated at other institutions.  They further allege

that the inmates at ISCI are being denied commissary items to which other Idaho inmates

have access at other institutions.  *Complaint*, p. 7-8.  Finally, Plaintiffs claim that

Defendants mismanaged the "Inmate Welfare Fund" which was created to help provide

recreational activities, to cover school and chapel costs, and to supply materials for the

Resource Center.  Plaintiffs allege that IDOC officials took the money from the fund and

used it for institutional bills.  *Id*.

Plaintiffs allege that they have exhausted the prison grievance system as to these

claims.  They request compensatory damages, declaratory relief, and injunctive orders.


## REVIEW OF COMPLAINT

The Court is required to review complaints seeking relief against a governmental

entity or an officer or employee of a governmental entity to determine whether summary

dismissal is appropriate.  *See* 28 U.S.C. § 1915.  The Court must dismiss a complaint or

any portion thereof which states a claim that is frivolous or malicious, that fails to state a

**ORDER  3**

claim upon which relief can be granted, or that seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B).

**Eighth Amendment Claim**

In order to state a claim under the Eighth Amendment, a plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A plaintiff must also show that the defendants were deliberately indifferent to the substantial risk of serious harm.  Deliberate indifference exists when an official knows of and disregards a condition posing a substantial risk of serious harm or when the official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws the inference.  *Id.,* 511 U.S. at 837.

In *Hoptowit v. Ray*, 682 F.2d 1237 (9th Cir. 1982)), the Court of Appeals explained:

> In analyzing claims of Eighth Amendment violations, the courts must look at discrete areas of basic human needs.  As we have recently held, " '(A)n institution's obligation under the eighth amendment is at an end if it furnishes sentenced prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety.'"  *Wright v. Rushen*, 642 F.2d 1129, 1132-33 (9th Cir. 1981)(citation omitted).

682 F.2d at 1246-47.

The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health.  *Lemaire v. Maass*, 12 F.3d 1444, 1456  (9th Cir. 1993) (the food served in prison satisfies the constitutional standard if it provides adequate nutrition).

**ORDER  4**

Inmates do not have a constitutional right to be served any particular type of food, *Burgin v. Nix*, 899 F.2d 733, 734-35 (8th Cir.1990), but the Eighth Amendment prohibition against cruel and unusual punishment requires that inmates be served "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir.1980), *cert. denied*, 450 U.S. 1041 (1981); *see also Robles v. Coughlin*, 725 F.2d 12, 14 (2d Cir.1983) (per curiam)(prisoners must be provided with nutritionally adequate food that is prepared and served under sanitary conditions).

Plaintiffs Orr and Smrz allege that the food being provided to inmates is nutritionally unbalanced and inadequate.  They further allege that the inadequate food is causing "current and ongoing harm to the health of the plaintiffs with future harm being assured." *Complaint*, p. 8.  The Complaint alleges two specific examples of alleged physical harm to inmates from the inadequate diet.  The first example involves Ray Burstein for whom a physician allegedly prescribed a special diet to address health problems he was experiencing.  Defendant Dawson, a regional physician for Correctional Medical Services, allegedly "destroyed the medical diet written by Dr. Partridge on May 30, 2006."  Dr. Partridge allegedly quit working for CMS over this incident. *Complaint*, p. 9.  The second example involves Plaintiff Smrz for whom a "high fiber" diet was prescribed for medical reasons, but Dr. Dawson allegedly cancelled the special diet. *Id*.

These allegations appear to state some of the essential elements of an Eighth

**ORDER  5**

Amendment claim relating to inadequate food for inmates, but the Complaint also gives examples of Defendants' attempts to change the amount of food provided or supplement the regular fare with additional food.  Therefore, it is difficult to determine whether Plaintiffs have adequately alleged that Defendants have been deliberately indifferent to their need for adequate nutrition, and the length of time there has been inadequate food for Plaintiffs.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994)(deliberate  indifference exists when an official knows of and disregards a condition posing a substantial risk of serious harm or when the official is aware of facts from which the inference could be drawn that a substantial risk of harm exists, and actually draws the inference); *see also Baptisto v. Ryan*, 2006 WL 798879, *27 (D. Ariz.)(inmate failed to show deliberate indifference because he was served a 2,800 calorie- per-day diet based on federally recommended nutritional values which took into account the inmates' sedentary lifestyle).

Plaintiffs also allege that "food is being prepared and served under conditions that are unsanitary and present a danger to prisoners' health."  *Complaint*, p. 7.  Plaintiffs claim that they are served spoiled fruit as part of their meal, and the trays, cups, and utensils in the cafeteria are unsanitary and "cause health problems."  *Id*., p. 11.  The inmates who prepare and serve the food are allegedly failing to follow proper sanitation guidelines.  There are no allegations stating that inmates have actually become ill from these conditions.

The difficulty with the allegations in the Complaint is that Plaintiffs purport to name over two hundred inmates as plaintiffs in the action, and they include such disparate

**ORDER  6**

Eighth Amendment claims as the failure to provide nutritionally unbalanced meals under sanitary conditions, the failure to follow prescribed medical diets, and the failure to employ a qualified dietician.  The two inmates who have allegedly been harmed by the food conditions are those for whom the medical provider cancelled prescribed medical diets.  This latter category of allegations is the area in which Plaintiffs appear to have adequately alleged Defendant Dawson's deliberate indifference to their need for a special diet.  Accordingly, Plaintiffs Smrz and Ray Burstein will be allowed to proceed on the medical diet claims against Defendants Dawson and Hall.  Plaintiff Burstein has not submitted an affidavit in support of indigent filing status, and therefore, if he intends to continue as a Plaintiff in this action, he must seek indigent filing status or pay the filing fee for the Complaint.

The allegations relating to nutritionally inadequate food and unsafe sanitation practices do not specifically state that Defendants were aware of the conditions and deliberately allowed the conditions to continue, but the Court will infer from the other allegations in the Complaint that there is an allegation of deliberate indifference to Plaintiffs' health and safety.  Plaintiffs are advised that they must come forward with evidence to show deliberate indifference, otherwise, the Plaintiffs' claims on these issues will be vulnerable to Defendants' request for summary judgment.

Plaintiffs Orr and Smrz will be allowed to proceed with the claims involving inadequate nutrition and sanitation against Defendants Blades, Feaster, Boyer, and

**ORDER  7**

Deppen. [1]  There are insufficient allegations of personal participation and knowledge of the food conditions to support Plaintiffs' claims against Defendants Beauclair, Sonnen, Zmuda, Rosenthal, and Majors.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)(plaintiff must demonstrate either that a defendant personally participated in the constitutional violation or that, as a supervisor, he directed, or knew of and failed to prevent, the actions causing the violation).

### Report on Food Preparation Claims

Based on the allegations in the Complaint and Plaintiffs' request for class certification, the Court has determined that it will allow counsel for the IDOC and CMS to prepare a report for the Court on the food preparation claims.  The Court's authority to request such a report is found in the case of *Martinez v. Aaron*, 570 F.2d 317, 318-19 (10th Cir. 1978); *see also,* Federal Judicial Center*, Managing Prisoner Civil Rights Litigation*, p. 33 (1996); *Thompson v. Gibson*, 289 F.3d 1218, 1220-21 (10th Cir. 2002)(the district court ordered the defendants to prepare a report on the inmate's claim that he was being denied adequate food).  The parameters of the report are as follows:

1.  No answer or pre-answer motions addressed to the amended complaint shall be filed until the steps set forth in this Order shall have been taken and completed.

---

[1]  Plaintiffs allege that Defendants Boyer and Deppen have been rude and disrespectful to inmates over food issues, but these allegations fail to state cognizable constitutional claims. Verbal harassment, abuse and threats, without more, are not sufficient to state a constitutional deprivation under § 1983.  *Oltarzewski v. Ruggiero*, 830 F.2d 136 (9th Cir. 1987) (allegations that correctional counselor told plaintiff that he would transfer him to a higher custody status unit if he tried to go to the law library and that he would be sorry if he filed a class action suit were not actionable under § 1983).

**ORDER  8**

2.  Officials responsible for the operation of the appropriate IDOC institution and counsel for CMS are directed to undertake a review of the subject matter of the Amended Complaint

(a) to ascertain the facts and circumstances; and

(b) to consider whether any action can and should be taken by the institution or other appropriate officials to resolve the subject matter of the Complaint.

3.  In the conduct of the review, a written report shall be compiled and filed with the Court.  Authorization is granted to interview all witnesses, including Plaintiffs and appropriate IDOC and CMS employees.  The report may contain sworn statements of persons having knowledge of the subject matter of the Amended Complaint.  When appropriate, medical records shall be included in the written report, taking into consideration the privacy concerns with inmates' medical information.

Where Plaintiffs' claims or the potential defendants' defenses relate to or involve the application of administrative rules, regulations, or guidelines, the written report shall include copies of all such applicable administrative rules, regulations, or guidelines.

4.  The report and applicable attachments shall be filed with the Court within sixty (60) days of this Order's date.

Plaintiffs will not be authorized to proceed with discovery on the Eighth Amendment claims involving nutritional adequacy, medical diets, and sanitation of food preparation against any Defendants until the report has been reviewed by the Court.  In the event the Court elects to use the report as the basis for dismissal of Plaintiffs' claims,

**ORDER  9**

they will be notified and given an opportunity to respond to the report.

**Property Deprivation Claim**

Plaintiffs allege in the "second and third issues" in the Complaint that they were allowed to purchase personal property items and use them while at one IDOC facility, but then were forced to give up the personal property when transferred to another institution. Plaintiffs claim that their due process rights have been violated.  Plaintiffs specifically allege that they were allowed to purchase "drawing pens and pencils, cups and bowls, video games, guitar strings, sunglasses, clip on lamps, [and] commissary items" while at other IDOC facilities, but they were forced to mail out or destroy these items when transferred to ISCI.

Plaintiffs' personal property allegations fail to state a cognizable constitutional claim.  Generally, the negligent or intentional unauthorized deprivation of property by prison officials does not state a cognizable cause of action under § 1983, if the prisoner has an adequate state post-deprivation remedy.  *Hudson v. Palmer*, 468 U.S. 517, 104 S. Ct. 3194 (1984); *Taylor v. Knapp*, 871 F.2d 803, 805-06 (9th Cir.1989), *cert. denied*, 493 U.S. 868 (1989).  Idaho has adopted the Idaho Tort Claims Act, I.C. § 6-901, *et seq.*, to provide a remedy for citizens injured by the tortious acts of governmental entities, officials and employees.  Because the Idaho Tort Claims Act provides a method whereby Plaintiffs can obtain redress for the alleged personal property loss, the claims are not of a constitutional magnitude.

**Equal Protection Claim**

**ORDER  10**

Plaintiffs also allege that their equal protection rights are being violated because inmates at ISCI are being denied commissary items, property items, and other privileges that IDOC inmates receive at other institutions.  The examples provided in the Complaint are: (1) inmates are denied their video games and Nintendo machines after they return to ISCI from living in a facility in another state; (2) inmates in the private prison facility, ICC, are allowed to purchase and use personal video games; and (3) ICC's commissary offers a greater variety of items than the ISCI commissary.

"In the prison context, . . . even fundamental rights such as the right to equal protection are judged by a standard of reasonableness – specifically, whether the actions of prison officials are 'reasonably related to legitimate penological interests.'"  *Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004) (quoting *Turner v. Safely*, 482 U.S. 78, 89 (1987)).

The standard of law governing constitutional claims of inmates was outlined by the United States Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987).  There, the Court examined a free speech issue in the context of prison officials prohibiting correspondence between inmates residing at different state institutions.  The *Turner* Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  482 U.S. at 89.  The Court identified four factors to consider when determining whether a regulation is valid: (1) whether there is a "rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether "there are alternative means

**ORDER  11**

of exercising the right that remain open to prison inmates"; (3) what "impact

accommodation of the asserted constitutional right will have on guards and other inmates,

and on the allocation of prison resources generally"; and (4) whether "ready alternatives"

exist.  482 U.S. at 89-90.

       The Supreme Court recently reaffirmed the use of the *Turner* analysis in a First

Amendment challenge brought by inmates in the Pennsylvania Department of Correction.

In *Beard v. Banks*, 126 S. Ct. 2572, 2576 (2006), the court upheld that the prison's policy

of depriving inmates held in the long term segregation units of newspapers, magazines,

and personal photographs.  The restrictive housing units also prohibited inmates' access

to commissary items, outside visitors, television, and radio.  *Id*.  Inmates in the restrictive

housing units were allowed legal and personal correspondence, religious and legal

materials, two library books, and writing paper.  *Id*.

       In the *Beard* case, the court applied the *Turner* factors, and determined that

statements and affidavits submitted by the prison officials set forth a valid, rational

connection between the prison policy of denying the written materials, and legitimate

penological objectives.  The court stated that the prison officials' summary judgment

motion

> "set forth several justifications for the prison's policy, including the
> need to motivate better behavior on the part of particularly difficult
> prisoners, the need to minimize the amount of property they control
> in their cells, and the need to assure prison safety, by, for example,
> diminishing the amount of material a prisoner might use to start a
> cell fire."

**ORDER  12**

*Beard*, 126 S. Ct. 2578.

The court also stated that it "need go no further than the first justification, that of providing increased incentives for better prison behavior[,]" and that prison officials' justification for the policy warranted the entry of summary judgment in their favor. *Id.*, 126 S. Ct. at 2578-79. Therefore, the Supreme Court has determined that in the context of restrictive housing units, courts should defer to prison officials' decisions relating to the management of difficult prisoners, although a "a prisoner may be able to marshal substantial evidence that, given the importance of the interest, the Policy is not a reasonable one." *Id*. at 2581-82.

Plaintiffs' first example of allegedly unequal treatment arises out of the deprivation of Nintendo and video games at ISCI. They allege that the inmates at the private prison, ICC, are allowed to possess and use video games, while those at ISCI are denied the privilege, despite the medium security designation of both facilities. Plaintiffs are advised that the Court is unaware of any case holding that there is a constitutional right to watch or own a television in prison. *See James v. Milwaukee* County, 956 F.2d 696, 699- (7th Cir. 1992)(denial of television does not constitute a cognizable civil rights claim); *Murphy v. Walker*, 51 F.3d 714, 718, n. 8 (7th Cir. 1995)(same); *Gladson v. Rice*, 862 F.2d 711, 713 (8th Cir. 1988)(same); *Montana v. Commissioners Court*, 659 F.2d 19, 23 (5th Cir. 1981) ("The claims relating to the usage of radio and television were properly dismissed as frivolous. These claims do not pertain to federal constitutional rights"); *Manley v. Fordice*, 945 F. Supp. 132, 136-37 (D. Miss.1996) ("[T]here is simply no right

**ORDER  13**

to television while incarcerated. . . . [S]uch items are luxuries, and any allowance of them in prisons is merely an altruistic act on the part of the Department of Corrections.").

Nintendo and other video games are both recreational activities which utilize a television.  Based upon the foregoing case law, there is no constitutional right to a television, and therefore, the deprivation of Nintendo and video games does not amount to a cognizable equal protection claim.  Therefore, Plaintiffs will not be allowed to proceed with this claim against any Defendants.

### Commissary Items

Based on the *Beard* case, it does not appear that Plaintiffs have a constitutional right to purchase commissary items, and therefore, the claim that more commissary items are offered at the private medium security facility is also subject to dismissal.  *See Beard*, 126 S. Ct. at 2578; *see also Robinson v. Illinois State Correctional Center*, 890 F. Supp. 715, 718 (N.D. IL 1995)(disparate commissary privileges in segregated and general population units does not state an equal protection claim), citing *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988).  Accordingly, Plaintiffs will not be allowed to proceed with this claim against any Defendants.

### Price Gouging Claim

Plaintiffs also describe the "fourth issue" in the case as a claim for price gouging of prisoners and their families.  *Complaint*, p. 17.  They allege that Keefe's Commissary has an exclusive contract with the IDOC to sell items in the inmate commissary. Plaintiffs allege that the contract allows for a markup of prices between 20 to 300 percent.

**ORDER  14**

*Complaint*, p. 17-18.

Plaintiffs also allege that they are forced to use a telephone service at the prison that charges $4.00 for the first minute of collect telephone calls and 89 cents for every minute thereafter.  The inmates were allegedly informed that the IDOC was changing the telephone service provider, and the cost would be $3.80 for a thirty-minute telephone call. Plaintiffs also claim that inmates relied on this information to purchase pre-paid calling credits for telephone calls.  *Complaint*, p. 18.  Defendants allegedly failed to provide the new calling service.

In support of Plaintiffs' claim of price gouging, they cite to statutes prohibiting the creation of monopolies.  For example, the Complaint cites to 15 U.S.C. § 13 which prohibits discrimination in price, services, or facilities.  The Court construes the Complaint to allege a violation of the Sherman Act which prohibits every contract, combination in the form of trust or otherwise, or conspiracy in restraint of interstate or foreign commerce.  15 U.S.C. § 1.  The Sherman Act also prohibits monopolization or attempted monopolization by any person or combination of persons of any part of interstate or foreign commerce.  *Id*. at § 2.

Plaintiffs are advised that Defendants' actions are immune from federal antitrust liability based on the state action doctrine.  In *Parker v. Brown*, 317 U.S. 341 (1943), the Supreme Court held that the Sherman Act was not intended to restrain state action, and therefore, the state may act anti-competitively to further certain policy goals.  *Id*. at 351. It does not appear that the Ninth Circuit has ruled on the applicability of the Sherman Act

**ORDER  15**

to prison commissary prices, but the Third Circuit has held that a ten (10) percent markup on items sold in New Jersey state prisons does not constitute a violation of inmates' constitutional rights. *See Myrie v. Commissioner*, 267 F.3d 251, 261 (3d Cir. 2001)(holding that the surcharge placed on the commissary items was necessary to address the legitimate penological and administrative interests of the prison).

Based on the foregoing, Plaintiffs' commissary price gouging claim is subject to dismissal, and they will not be allowed to proceed with it against any Defendants.

Plaintiffs also claim that Defendants have engaged in price gouging on the telephone service provided to inmates. The Ninth Circuit has ruled that the First Amendment right to telephone access is subject to reasonable restrictions arising out of the legitimate security concerns in a prison facility. *Johnson v. State of California*, 207 F. 3d 650, 656 (9th Cir. 2000), *overruled on other grounds*, 543 U.S. 499 (2005). The *Johnson* case stated that "there is no authority for the proposition that prisoners are entitled to a specific rate for their telephone calls." *Id*. The inmates' First Amendment claim was dismissed because "there were no facts from which one could conclude that the rate charged is so exorbitant as to deprive prisoners of phone access altogether." *Id*.

Plaintiffs appear to be asserting a Sherman Act claim on the telephone charges, and the Court is unaware of a Ninth Circuit ruling involving a prisoner telephone usage claim brought under the Sherman Act. In the Seventh Circuit, the court of appeals determined that the plaintiff was not entitled to relief on her antitrust claim that the State contracted with only one telephone service vendor for the prison and received a kick back

**ORDER  16**

from the extremely high telephone fees.  *Arsberry v. Illinois*, 244 F.3d 558 (7th Cir.

2001), *cert. denied*, 534 U.S. 1062 (2001).  The court held that "states and other public

agencies do not violate the antitrust laws by charging fees or taxes that exploit the

monopoly of force that is the definition of government."  *Id.* at 566.

The *Arsberry* ruling also stated that, to the extent the inmates were merely

challenging the telephone rate, their claims were precluded by the filed rate doctrine.  *Id.*

at 566-67.  The filed rate doctrine "is a judicially-created doctrine providing that a utility

rate (a tariff) filed with the appropriate regulatory agency is the only legal rate and may

not be directly challenged in court; any challenge must be directed to the regulatory

agency itself."  Madeleine Severin, Note, *Is There a Winning Argument Against Excessive*

*Rates for Collect Calls from Prisoners?* 25 Cardozo L. Rev. 1469, 1483 (2004).[2]

Therefore, it appears that Plaintiffs' challenge to a telephone rate must be brought before

the Idaho Public Utility Commission, and it is subject to dismissal against all Defendants.

### Inmate Welfare Fund

Plaintiffs "Fifth Issue" alleges that Defendants misused the inmate management

fund.  Plaintiffs claim that there is a fund called either the Prisoners' Welfare Fund or the

Inmate Management Fund into which the surcharges for commissary and telephone use

were deposited.  *Complaint*, p. 20.  Plaintiffs allege that the funds are supposed to be used

to purchase educational materials, items for the chapel, recreational items, resource center

---

[2]  According to Severin, the Federal Communications Commission is examining long
distance telephone service rates imposed on inmates and their families.  25 Cardozo L. Rev.
1469 n. 10.

**ORDER  17**

materials, television programming, and movies.  Plaintiffs further allege that the inmate

funds were supposed to be used to resupply the band room and purchase musical

instruments.  *Id*.

Plaintiffs claim that Defendants have failed to use the inmate funds for their

designated purposes and have instead used them to pay institutional debts.  *Id*. p. 21.

Plaintiffs also assert that Defendants have depleted the fund without proper authorization,

and they request an audit of the inmate management fund.  *Id*. p. 21-22.

In *Washington v. Reno*, 35 F. 3d 1093 (6th Cir. 1994), the court of appeals

examined the use of a Prison Commissary Fund to pay for the installation of a new

telephone calling system for the inmates in a federal correctional facility.[3]  The funds

were derived from the sale of commissary items and were held in trust "for any purpose

accruing to the benefits of the inmate body, as a whole, such as amusements, education,

library, or general welfare work."  *Id*. at 1096.  The court of appeals upheld the issuance

of an injunction against the use of the Prison Commissary Funds to pay for the

installation of the new telephone service.  *Id*. at 1102-03.  The use of funds to purchase

live monitoring of inmate calls was considered a breach of fiduciary duty owed to the

inmates.  *Id*. at 1101.

Plaintiffs' Complaint does not contain a description of the statute or regulation

---

[3]  The Federal Bureau of Prisons upgraded the collect-call system to one allowing for
direct-dial calls.  The inmates purchased telephone credits and indigent inmates were still
allowed to make collect calls, if they could not afford to purchase credits.  *Washington*, 35 F.3d
at 1095-96.

**ORDER  18**

governing the Inmate Welfare Fund, and therefore, the alleged uses to which the IDOC is allocating the funds may not be a breach of fiduciary duty to the inmates. The Court shall request that the IDOC Defendants provide a report on the use of the Inmate Welfare Fund to pay for expenses other than those for which the fund was intended. The report shall follow the format set forth above. In the event the Court decides to use the report as a basis for dismissal of this portion of Plaintiffs' Complaint, they will be given an opportunity to respond to the report.

Based on the foregoing, Plaintiffs will be conditionally allowed to proceed against Defendants Sonnen and Rosenthal on the inmate trust fund claim.

## PENDING MOTIONS

Plaintiff Orr filed two Motions to Proceed *in Forma Pauperis* (Docket Nos. 1, 21), and it appears that good cause exists to grant his request for indigent filing status. Therefore, his motions are granted. It appears that Plaintiff Nelson's Motion to Proceed *in Forma Pauperis* (Docket No. 3) is moot because he is not named as a Plaintiff in the caption of the Amended Complaint. *Docket No. 24*. Neither does the body of the Amended Complaint contain allegations that Plaintiff Nelson's constitutional rights were violated. Accordingly, Nelson's application for indigent filing status is moot.

Plaintiff Smrz also filed a Motion to Proceed *in Forma Pauperis* (Docket No. 5), and it appears that good cause exists to grant his request for indigent filing status. Therefore, his motion is granted.

Plaintiffs also filed two Motions to Certify Class (Docket Nos. 9, 20). The caption

**ORDER  19**

of the Amended Complaint lists two Plaintiffs' names and "All Others Similarly

Situated." *Docket No. 24*, p. 1.  The Complaint lists over two hundred names of inmates

who were allegedly incarcerated at ISCI during the time the constitutional violations

occurred.  Plaintiffs' request for class certification is governed by Federal Rule of Civil

Procedure 23.  Rule 23(a) provides that a court should certify a class only if the following

prerequisites are met: (1) the class is too numerous, making joinder of the parties

impracticable; (2) common questions of law or fact exist among the class members; (3)

the claims of the class representatives are typical of the claims of the class; and (4) the

class representatives will fairly and adequately represent the interest of the class.  In

addition to satisfying the mandatory prerequisites in Rule 23(a), the potential class

members must also demonstrate that they meet at least one of the alternative requirements

under Rule 23(b).  Plaintiffs' length of incarceration also bears on their ability to

represent a class of inmates in a prison conditions lawsuit.

　　　　In addition, the court may consider whether a class action is the best method

available to fairly and efficiently adjudicate the controversy.  Fed. R. Civ. Proc. 23(b)(3).

For example, when a suit challenges the constitutionality of a policy, procedure or

practice by a state actor, it can be assumed that, if the court declares the policy, procedure

or practice unconstitutional, then the responsible government officials will discontinue

enforcement of it.  *See Lent v.* Lopes, 107 F.R.D. 62 (D. Conn. 1985); *Giles v. Prattville*,

556 F. Supp. 612 (D. Ala. 1983); *Chacon v. Zahorka*, 663 F. Supp. 90 (D. Colo. 1987).

Here, Plaintiffs are seeking both declaratory and injunctive relief which, if granted, would

**ORDER  20**

appear to benefit the potential class members without the necessity of a class action.

Based on the foregoing, the Court has determined that Plaintiffs failed to make the requisite showing for class certification at this time, and the motions will be denied.  The Court also denies Plaintiffs' Motion to Create a Copying Account for the class representatives (Docket No. 10) and Plaintiffs' Motion to Provide Copies to class members  (Docket No. 15).

Finally, Plaintiffs filed a Motion to Stay (Docket No. 18), requesting that the Court allow them to file an Amended Complaint prior to issuing its initial review order. Plaintiffs filed their Amended Complaint shortly thereafter, and the Court reviewed it in this Order.  Therefore, the request for a stay is now moot.


**ORDER**

NOW THEREFORE IT IS HEREBY ORDERED that the named Defendants shall be allowed to waive service of summons by executing, or having their counsel execute, the Waiver of  Service of Summons as provided by Fed. R. Civ. P. 4(d) and returning it to the Court within thirty (30) days.  If Defendants choose to waive service, the answer or pre-answer motion shall be due in accordance with Rule 12(a)(1)(B).  Accordingly, the Clerk of Court shall forward a copy of the Amended Complaint (Docket No. 24-1), a copy of this Order, and a Waiver of Service of Summons on behalf of Defendants Blades, Feaster, Boyer, Deppen, Hall, Sonnen, and Rosenthal, to Paul Panther, Deputy Attorney General, P.O. Box 83720, Boise, Idaho 83720-0018.  The same set of documents shall be

**ORDER  21**

served on John Burke, Hall, Farley, Oberrecht & Blanton, on behalf of Defendant Dawson.  Defendants' report on the claims set forth above shall be submitted within sixty (60) days of this Order's date.

IT IS FURTHER HEREBY ORDERED that Plaintiff Orr's Motions to Proceed *in Forma Pauperis* (Docket Nos. 1, 21) are GRANTED.

IT IS FURTHER HEREBY ORDERED that Plaintiff Nelson's Motion to Proceed *in Forma Pauperis* (Docket No. 3) is MOOT.

IT IS FURTHER HEREBY ORDERED that Plaintiff Smrz' Motion to Proceed *in Forma Pauperis* (Docket No. 5) is GRANTED.

IT IS FURTHER HEREBY ORDERED that Plaintiffs' Motions to Certify Class (Docket Nos. 9, 20) are DENIED.

IT IS FURTHER HEREBY ORDERED that Plaintiffs' Motion to Create Copying Account (Docket No. 10) is DENIED.

IT IS FURTHER HEREBY ORDERED that Plaintiffs' Motion to Provide Copies (Docket No. 15) is DENIED.

**ORDER  22**

     IT IS FURTHER HEREBY ORDERED that Plaintiffs' Motion to Stay (Docket

No. 18) is MOOT.



DATED:  **September 25, 2006**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**ORDER  23**