IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

GREGORY J. NELSON, PATRICK )
SMRZ, and ROY BURSTEIN, )
                        )    Case No. CV06-53-S-BLW
            Plaintiffs, )    (Lead case)
                        )    CV07-182-S-BLW
                        )
vs.                     )    **MEMORANDUM DECISION**
                        )    **AND ORDER**
APRIL DAWSON, KATIE HALL, )
RANDY BLADES, STEVE )
FEASTER, CARL BOYER, )
C. DEPPEN, TERRI ROSENTHAL, )
PAM SONNEN, et al., )
                        )
            Defendants. )
_____ )

## INTRODUCTION

Several motions are currently pending before the Court in this prisoner civil

rights case.  In the interests of avoiding further delay, the Court shall resolve these

matters on the parties' briefing and the record.  D. Idaho L. Civil R. 7.1(d)(2).

For the reasons set forth more fully below, the Court denies Plaintiffs'

Motion for a Temporary Restraining Order (Docket No. 104) and Plaintiffs' two

motions to amend and supplement the Complaint (Docket Nos. 106 & 127).  The

Court grants in part Plaintiffs' Motion to Join Defendants (Docket No. 128) but

**MEMORANDUM DECISION AND ORDER - 1**

only insofar that Food Service Manager Bud Johans shall be substituted for Steve Feaster.

The Court grants Defendant April Dawson's Motion for Summary Judgment (Docket No. 143), and all claims against her shall be dismissed.  In addition, the Plaintiffs' "Fifth Issue" in their Amended Complaint related to mismanagement of the Inmate Management Fund shall be dismissed.

Finally, the Court grants, in part, Plaintiffs' Motion to Appoint Neutral Experts (Docket No. 123), and the parties will be ordered to submit to the Court the names of three experts in diet and nutrition who are willing to examine the portions and nutritional value of the food that is served to the inmates at the Idaho Southern Correctional Institution and to thereafter submit a report to the Court. Because of this ruling, the current deadline to file dispositive motions shall be vacated, and these consolidated cases shall be stayed pending the appointment of the expert and the submission of the report.

## BACKGROUND

Plaintiffs Orr, Nelson, and Smrz are the inmates at the Idaho State Correctional Institution (ISCI) who originally filed this action.  The Court conducted its initial review of the Amended Complaint and conditionally allowed Plaintiffs to proceed with the following claims: (1) the Idaho Department of

**MEMORANDUM DECISION AND ORDER - 2**

Correction Defendants have violated Plaintiffs' rights under the Eighth Amendment by (a) preparing and serving food under unsanitary conditions, and by (b) failing to provide food in sufficient quantity and with sufficient nutritional value to preserve the health of the inmates; (2) the Defendants arbitrarily cancelled or did not follow medically prescribed diets for the inmates; and (3) Defendants Sonnen and Rosenthal violated their fiduciary duties in expending money that had been deposited in an "Inmate Management Fund."

In its Initial Review Order, the Court ordered counsel for IDOC and CMS to conduct an investigation into these claims and to submit a joint *Martinez* report.[1] Defendants have complied with the Court's Order and filed their report.  (Docket Nos. 43, 44, and 45.)  The Court later granted Dennis Orr's request to withdraw as a plaintiff.  (Docket No. 62.)

Inmate Roy Burstein subsequently filed his own Complaint, which the Court consolidated with the present action.  In his Complaint, Burstein alleges that Dr. April Dawson prevented him from receiving a medical diet prescribed by CMS physician Partridge.  He also claims that Defendants Randy Blades and Food Services Officers Deppen and Bauer interfered with the medical diet he had been prescribed, thereby causing him physical suffering and degeneration.

---

[1] *Martinez v. Aaron*, 570 F.2d 317, 318-19 (10th Cir. 1978).

**MEMORANDUM DECISION AND ORDER - 3**

The Plaintiffs have since responded to the Defendants' *Martinez* Report, and the Court issued an order to show cause why it should not grant summary judgment to the Defendants on Plaintiffs' claims relating to the allegedly unsanitary conditions in the preparation of food and relating to the handling of the Inmate Management Fund.

The Plaintiffs have filed their opposition to the show cause order. Several other motions are pending before the Court, including Defendant April Dawson's Motion for Summary Judgment. These matters are ripe, and the Court is now prepared to rule.

## MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff Nelson has asked for a Court order "directing that [he] be immediately transferred back to ISCI, placing him in the same status as he was prior to the proposed transfer to ICC on 2/28/07." (Docket No. 104, p. 1.) Nelson has since been returned to ISCI, where, according to IDOC records, he is housed today. http://www.accessidaho.org./public/corr/offender/search. Because he has already received the relief that he seeks, the Motion shall be denied as moot.

## PLAINTIFFS' MOTIONS TO AMEND

Plaintiffs have requested leave of Court to amend and "supplement" the Complaint. (Docket Nos. 106 & 127.) The proposed amendments include new

**MEMORANDUM DECISION AND ORDER - 4**

claims in which Plaintiff Gregory Nelson alleges (1) that the DOC transferred him from ISCI to another prison in retaliation for filing grievances and for his involvement in this lawsuit, and (2) that the prison's medical provider refused to give him appropriate medical care for a cataract in his left eye.

Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend its initial pleading "once as a matter of course" before being served with a responsive pleading.  The Plaintiffs have already amended their Complaint, and because the Defendants have not consented to another amendment, they must now seek leave of Court.  Fed. R. Civil P. 15(a)(2).  There is a strong public policy in favor of amendments, and a district court should "freely give leave [to amend] when justice so requires," *see id*., but the court retains the discretion to deny leave after considering factors such as "bad faith, undue delay, prejudice to the opposing party, and futility of amendment."  *Roth v. Garcia Marquez*, 942 F.2d 617, 628 (9th Cir. 1991) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

After weighing the factors in the present case, the Court will exercise its discretion to deny Plaintiffs' request.  The Court concludes that allowing the amendment would broaden this case far beyond the issues framed by Initial Review Order and in the Defendants' *Martinez* Report.  In addition, this matter has been pending for nearly three years, and adding largely unrelated claims pertaining

**MEMORANDUM DECISION AND ORDER - 5**

solely to Plaintiff Nelson would essentially re-start the litigation and result in unnecessary delay.

It appears that Plaintiff Nelson could still bring his claims in a new lawsuit, if necessary, negating any prejudice to him. The length of the statute of limitations for a civil rights action is governed by the state statute for personal injury claims. *Wilson v. Garcia*, 471 U.S. 261 (1985). Idaho Code § 5-219 provides for a two-year statute of limitations for personal injury actions. To the extent that the Court can discern the full scope of his factual allegations, Plaintiff Nelson's claim of retaliation did not ripen until early 2008, and the medical treatment claim arose when the prison's medical provider allegedly refused to transport him to an eye appointment in March 2008. If so, the statute of limitations has not yet run for these claims.

On a related issue, the Court will grant in part and deny in part Plaintiffs' Motion to Join Defendants. Based on the IDOC Defendants' non-objection to substituting Food Service Manager Bud Johans in the place of Steve Feaster, that request will be granted. (Docket No. 134, p. 2.) No other defendants will be joined or substituted at this time.[2]

_____

[2] The IDOC Defendants also did not object to John Hardison being substituted for the previous warden Randy Blades, but the Court takes judicial notice that Hardison is no longer the warden at ISCI. *See* http://www.corr.state.id.us/2008_releases.htm#chief.

**MEMORANDUM DECISION AND ORDER - 6**

## DEFENDANT APRIL DAWSON'S
## MOTION FOR SUMMARY JUDGMENT

Dr. April Dawson, the Regional Medical Director for CMS, seeks summary judgment in her favor on all claims raised by Plaintiffs Smrz and Burstein. Plaintiff Smrz has since filed a Notice of Non-Objection to the Motion as it pertains to his claim that Dr. Dawson arbitrary cancelled his bran diet (Docket No. 146), and judgment shall be entered in Dr. Dawson's favor with respect to Smrz's claim against her.

Plaintiff Burstein also alleges that Defendant Dawson violated his Eighth Amendment right to have adequate medical care by destroying or cancelling his medical diet authorization. Despite receiving a Notice to Pro Se Litigants of the Summary Judgment Rule Requirements (Docket No. 144), Plaintiff Burstein did not file a written response to Dr. Dawson's Motion, and the time to do so has long since passed. The Court has nonetheless independently reviewed the evidence in the record and concludes that Dr. Dawson is entitled to judgment as a matter of law over his claims.

### Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

**MEMORANDUM DECISION AND ORDER - 7**

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

In a motion for summary judgment, the moving party bears the "initial burden of  identifying for the court those portions of the record which demonstrate the absence of any genuine issues of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986)). If the moving party points to portions of the record demonstrating that there appears to be no genuine issue of material fact as to claims or defenses at issue, the burden of production shifts to the non-moving party. To meet its burden of production, the non-moving party "may not rest upon the mere allegations contained in his complaint, but he must set forth, by affidavits, exhibits or otherwise, specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; *see T.W. Electric Serv*., 809 F.2d at 630 (internal citation omitted).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. All inferences that can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W.*

**MEMORANDUM DECISION AND ORDER - 8**

*Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted).  The Court is required, however, to determine whether the evidence set forth meets the requirements of Rule 56(c) and (e).  In so doing, the Court is to look at admissibility of the *content* of the evidence, rather than the admissibility of the *form* of the evidence.  *See Fonseca v. Sysco Food Service of Arizona*, 374 F.3d 840, 846 (9th Cir. 2004); *Block v. City of Los Angeles,* 253 F.3d 410, 418-19 (9th Cir. 2001).  Declarations that contain hearsay are admissible for summary judgment purposes if they "could be presented in an admissible form at trial."  *Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003).

Rule 56(c) requires the Court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 377 U.S. at 322.  The existence of a scintilla of evidence in support of the non-moving party's position is insufficient.  Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson v. Liberty Lobby*, 477 U.S. at 252.

<u>Eighth Amendment Standards</u>

To state an Eighth Amendment claim regarding prison medical care, Plaintiff must show that prison officials' "acts or omissions [were] sufficiently

**MEMORANDUM DECISION AND ORDER - 9**

harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference.  *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).  Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (footnotes omitted).

Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment.  *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980).  A mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay causes serious harm.  *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990).  The Ninth Circuit has clarified that if medical personnel have been "consistently responsive to [the inmate's]

**MEMORANDUM DECISION AND ORDER - 10**

medical needs," and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," summary judgment is proper. *Toguchi v. Chung*, 391 F.3d 1051, 1061 (9th Cir. 2004).

<u>Discussion</u>

In his Complaint, Plaintiff Burstein claims that Dr. Dawson arbitrarily destroyed a medical diet authorization written by Dr. Partridge on May 25, 2006, and that Dr. Partridge quit working for CMS following this incident. (Case No. CV 07-182-S-BLW; Docket No. 3, pp. 16-20; Case No. CV 06-53, Docket No. 55, p. 9, ¶ 33.)

Dr. Dawson has submitted an affidavit alleging the following material facts. By May 2006, she had reviewed Plaintiff's chart and was aware of Dr. Partridge's notation that Plaintiff had "multiple food allergies" and had requested a medical diet that "sounds reasonable." (Affidavit of April Dawson, M.D., ¶¶ 14, 16.) If Dr. Partridge actually wrote a diet memo, however, it cannot be found in Plaintiff's medical records. (*Id.* at ¶ 15.) Dr. Dawson indicates that it is her practice not to remove documents from an inmate's file. (*Id.*)

After reviewing Plaintiff's extended history of dietary requests, Dr. Dawson concluded that his requests were based mainly on "preferences" rather than

**MEMORANDUM DECISION AND ORDER - 11**

medical necessity.  (*Id*.)  Dr. Dawson did note that Plaintiff required a substitute for peanuts and cow's milk due to his allergies.  She also recommended a selective diet that would allow him to choose between the Mainline, Healthy Choice, or vegetarian options, and she asked for a re-evaluation of his case in one month to re-assess his dietary needs.  (*Id*.)

Dr. Dawson later conferred with Dr. Fry, Plaintiff's cardiologist.  (*Id*. at ¶ 17.)  Dr. Fry suggested that Plaintiff should be put on a high protein, low carbohydrate diet, to the extent that such a diet was possible in prison.  (*Id*; Attached Exhibit, ISCI–RB 133.)  After meeting with Plaintiff at a follow-up visit on August 10, 2006, Dr. Dawson authorized a new diet, which provided for the Healthy Choice menu with snacks to be provided at 10:00 a.m., 2:00 p.m., and 8:00 p.m.  Two weeks later, she issued another prescription for a gluten-free diet.  (*Id*.)

Although Plaintiff failed to respond to the Motion for Summary Judgment, he did submit an earlier affidavit in response to the Defendants' *Martinez* Report.  (Docket No. 85, Affidavit of Roy Burstein.)  In his affidavit, he insists that Dr. Partridge wrote a diet memo that apparently allowed him to pick and choose each day among the items that were offered in different meal plans, and that this memo was destroyed.  (*Id*. at ¶¶ 11, 12.)  He further contends that his blood pressure increased after the change in his diet.  (*Id*. at ¶¶ 11, 16B-C.)

**MEMORANDUM DECISION AND ORDER - 12**

Even assuming that such a memo existed and that it was lost or destroyed, the Court finds that Plaintiff has failed to allege facts from which a reasonable trier of fact could conclude that Dr. Dawson was deliberately indifferent to his serious medical needs.  Instead, the undisputed evidence shows that Dr. Dawson researched Plaintiff's medical history, considered his dietary needs within that context, consulted with his cardiologist, met with Plaintiff personally, and eventually recommended a specialized diet plan that is available at the prison.  This was a reasonable course of action, and Plaintiff's disagreement with Dr. Dawson's decisions about his diet is not sufficient to create a genuine issue as to an Eighth Amendment claim.  *See*, *e.g.*, *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) (holding that a "mere dissatisfaction or disagreement with a doctor's course of treatment" does not state an Eighth Amendment claim).

Based on the foregoing, the Court concludes that there are no genuine issues of material fact and Defendant Dawson is entitled to judgment as a matter of law on Plaintiff Burstein's claims against her.  Because there are no claims remaining against Dr. Dawson, she shall be dismissed from this case.

## RESPONSE TO ORDER TO SHOW CAUSE

After reviewing the Defendants' *Martinez* Report, the Court directed the Plaintiffs to show cause why summary judgment should not be granted on "claims

**MEMORANDUM DECISION AND ORDER - 13**

pertaining to the allegedly unsanitary conditions in the preparation and storage of food at ISCI" and on "Plaintiffs' Inmate Management Fund claim."  (Docket No. 120, p. 8.)  Plaintiffs have since filed responses.  (Docket Nos. 72, 82.)

Because the Court intends to appoint a neutral expert to examine and report on the portion size and nutritional value of food that is served to inmates at ISCI, it will reserve its ruling on the Plaintiffs' connected claim that food is served under unsanitary conditions.  For the reasons that follow, however, the Court will dismiss the Plaintiffs' claim that Defendants have used money from an Inmate Management Fund for impermissible purposes.

<u>The Plaintiffs' Claim</u>

In their Amended Complaint, the Plaintiffs assert that an Inmate Management Fund ("IMF") was created years ago to pay for school materials, chapel services, recreation, the legal Resource Center, movies, cable television and special meals on holidays.  (Docket No. 24, p. 20.) They contend that surcharges from the commissary and telephone use were deposited into this fund for the inmates' benefit, but that Defendants have also used the money to pay institutional debts, staff salaries, and uniforms.  (*Id*. p. 21.)  Plaintiffs assert that they have a protected property interest in the IMF, and they request an audit.  (*Id*. p. 21-22.)

In its Initial Review Order, the Court noted that the Plaintiffs did not include

**MEMORANDUM DECISION AND ORDER - 14**

a description of the statute or regulation governing the IMF and that it was not possible to discern whether the uses to which the IDOC was allocating the money could be a breach of a fiduciary duty.   The Court ordered the Defendants to investigate the matter and to address it in their *Martinez* Report.

<u>The Defendants' Report</u>

The Defendants agree that the IMF has been in existence in one form or another for many years and that it has been used to pay for school materials, recreation, the Resource Center, movies, cable television and special meals on holidays.  (Docket No. 43-3, Affidavit of Shirley Audens, ¶¶ 3, 11.)  In a lawsuit filed in 1984, the IDOC and inmates at ISCI agreed that proceeds from the prison commissary could not be used for security-related "hardware or software" or staff salaries unless those positions were related to the commissary or inmate recreation. *Hamilton v. Murphy*, CV-84-1052-S-BLW.  This agreement remained in effect until May 18, 2001, when the Court entered Judgment dismissing the case in its entirety and terminating the prospective relief provided by the settlement agreement.  (*Id*. at Docket No. 131.)

Currently, in addition to commissions from the commissary, money for the IMF is collected from phone commissions, laundry fees collected by community work centers, vending machine commissions from a visiting room, warehouse

**MEMORANDUM DECISION AND ORDER - 15**

lease payments from the commissary provider, donations, and incentive fees received for notifying the Social Security Administration of inmates that are improperly receiving Social Security checks.  (*Id*. at ¶ 5.)  This money is then deposited directly in the state treasury before it is appropriated back to the IDOC each year as part of the annual budget from the Idaho Legislature.  (*Id*. at ¶ 5)  Each institution now has the discretion to spend its portion of the IMF as it sees fit, subject only to state purchasing policies.  (*Id*. at ¶ 9.)

The Defendants assert that presently there is no statute, regulation, rule, or injunctive order governing how the Fund is to be used by the IDOC.  An IDOC policy does exist–the Inmate Management Fund Equity Policy Direction–but the policy sets forth the only fiscal responsibilities of the IDOC to comply with the Governmental Accepted Accounting Practices and the laws of the State of Idaho.  (Id. at ¶ 4.)  The Defendants claim that because there is no state law governing how money from the IMF must be disbursed, they do not owe a fiduciary duty to the inmates with respect to this particular resource.  (Docket No. 43, pp. 26-28.)

<u>The Plaintiffs' Response</u>

In their response, the Plaintiffs have offered their interpretation of the history and purpose of the IMF as it was originally conceived.  They contend that the fund was first created in the early 1970s for the benefit of the inmates at the old

**MEMORANDUM DECISION AND ORDER - 16**

state prison in east Boise.

According to Plaintiff Dennis Slaughter, who was an inmate at the old prison, a commissary was established in 1970 "by loan from the Prison's general fund to the inmates, with the stipulation that the money had to be repaid to the prison, it was."  (Docket no. 131-2, Affidavit of Dennis Slaughter, ¶¶ 6, 8.) The inmates then voted to create a "welfare" fund in 1973 by taking up to 50% of the proceeds from commissary sales and using that money to buy "rec equipment, rent movies, buy some public TVs, library books, and other items for our benefit."  (*Id.* at ¶ 3.)  Inmates were permitted to borrow money from the fund and to repay it within a reasonable time.  (*Id.*)  Plaintiff Slaughter claims that "[t]he Commissary and I.W.F. remained as it was intended until the 1990's [until] officials figured out how to steal money from it for things it was not intended for."  (*Id.* at ¶ 7.)

<u>Discussion</u>

After reviewing the Defendants' *Martinez* Report and the Plaintiffs' responses, the Court concludes that this claim must be dismissed.  Whatever the IMF's structure and purpose might have been in the 1970s and early 1980s, at some point in the intervening decades the source of the proceeds and the procedure by which the money was deposited and routed back to the IDOC changed considerably.  Although it appears that the IMF has historically been used

**MEMORANDUM DECISION AND ORDER - 17**

primarily on recreational items, school materials, movies, televisions, special holiday meals, and the like, the Plaintiffs have pointed to no statute, regulation, rule, or court order that currently requires such use.  The prospective relief in the *Hamilton* case limiting the use of commissary proceeds has since been terminated, freeing the IDOC to exercise its discretion in the disbursement of all funds.

It is for this reason that the current matter is distinguishable from *Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994).  That case involved the use of money in a federal prison "commissary fund" to establish, in part, a telephone monitoring system.  Under 31 U.S.C. § 1321(a)(22), "prison commissary funds" in federal prisons are to be held in trust for the inmates and shall be used "for any purpose accruing to the benefits of the inmate body, as a whole, such as amusements, education, library , or general welfare work.  *Id*. at 1096.  As a result, the Sixth Circuit held that the district court did not err in issuing an injunction against the use of the commissary fund to pay for the installation of new telephone services.  *Id*. at 1102-03.  The use of funds to purchase live monitoring equipment was considered a breach of a fiduciary duty owed to the inmates.  *Id*. at 1101.

Here, in contrast, the Plaintiffs do not dispute the Defendants' claim that there is no law requiring that the current Inmate Management Fund, which is not comprised of inmate money, be held in trust for Idaho inmates.  While the IDOC's

**MEMORANDUM DECISION AND ORDER - 18**

use of the fund for the inmate population's benefit as a whole is consistent with its early tradition and is a laudable practice, the IDOC does not hold a fiduciary duty to the inmates to use the resource solely in that manner.

Accordingly, the Court concludes that this is not a claim upon which relief may be granted.  Therefore, the Plaintiffs' claim based on the alleged misuse of the Inmate Management Fund shall be dismissed from this proceeding.  28 U.S.C. § 1915(e)(2)(B).

## PLAINTIFFS' MOTION
## FOR THE APPOINTMENT OF NEUTRAL EXPERTS

The Court ordered the Defendants to investigate the Plaintiffs' complaint about the lack of nutritious food and to submit findings in their *Martinez* Report. In the Report, Defendants set out, in great detail, the process by which menus are developed for the basic food plans at the state prisons.  The Defendants have also provided copies of the menus and the portions of food that are intended to be served for each of the main dietary plans.

The Plaintiffs counter that the menus are not followed *in practice*, and they have requested that the Court appoint neutral experts, such as a nutritionist and a certified diabetes educator who is also a registered dietician, to examine the nutritional value of the food that is served to the inmates.  With the exception that a single expert should be able to fulfill this role, the Court finds this request to be

**MEMORANDUM DECISION AND ORDER - 19**

well-taken.

It is clear that prisoners do not have a right under the Eighth Amendment to food that is aesthetically pleasing or especially flavorful. *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) (holding that serving "Nutriloaf" under certain conditions in a segregation unit was not cruel and unusual punishment). "The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985). However, prison food must still be "adequate to maintain health." *LeMaire*, 12 F.3d at 1456.

Given the state of the law and the information that the Defendants provided in their *Martinez* Report, it seems unlikely that a facial challenge to the IDOC's meal plans would have merit. The Plaintiffs claim, however, that the quantity of food prescribed by those plans is often so diminished when it is served, and non-nutritious items are substituted to such a degree, that the food that the prison provides to them is not adequate to maintain their health over time. Thus, there appears to be a disputed factual issue as to the nutritional value of the food that is served, and the resolution of that issue will likely involve scientific or technical matters.

An expert witness assist the trier of fact when the evidence or a fact at issue

**MEMORANDUM DECISION AND ORDER - 20**

is dependent on scientific, technical or other specialized knowledge.  FED. R. EVID.
702.  Under Federal Rule of Evidence 706, the court has the authority on its own
motion or on the motion of any party to appoint an expert, and the court may
request the parties to submit nominations.  In accordance with Rules 702 and 706,
the Court finds that an expert in diet and nutrition would be helpful in
understanding scientific or technical matters in this case.

In reaching this conclusion, the Court is not persuaded by the Defendants'
argument that appointing an expert is tantamount to ordering prospective relief.
The burden on the Defendants to allow an expert to examine the prison's food
service will be minimal, and he or she will not have the authority of "a monitor to
oversee compliance with the menu at ISCI."  (Docket No. 129, p. 6.)  Nor will an
expert be appointed to aid only the Plaintiffs, as the Defendants argue.  Rather, the
Court intends for the expert to be neutral and to exercise independent judgment in
rendering an opinion, which may eventually favor the Defendants.

Accordingly, the parties shall nominate the names of three dietary
experts–registered dieticians, certified nutritionists, or some other qualified expert
in diet and nutrition–who have the necessary training or experience to examine the
nutritional value of the food that is served to the inmates on the different meal
plans at ISCI and to render an opinion whether it is adequate to maintain health.

**MEMORANDUM DECISION AND ORDER - 21**

The parties shall nominate only those individuals who are willing to accept an appointment, and their proposed fees shall be included.  In lieu of submitting three names, the parties may choose to stipulate to the neutral expert who can provide this service.  The parties shall also submit proposed instructions to facilitate the process and to guide the submission of the report.[3]

Because the Court concludes that an independent expert is necessary, and because the Plaintiffs are indigent, the Court gives notice of its intent to impose the cost of the expert's reasonable compensation on the IDOC Defendants.  FED. R. EVID. 706(b)("compensation may be paid by the parties in such proportion and at such time as the court directs"); *McKinney v. Anderson*, 924 F.2d 1500, 1510 (9th Cir. 1991)([w]e believe that [Rule 706(b)], in an appropriate case, permits the district court to apportion all the cost to one side"), *vacated on other grounds sub. nom. Heiling v. McKinney*, 502 U.S. 903 (1991); *Webster v. Sowders*, 846 F.2d 1032, 1038 (6th Cir. 1988).  The Court does not believe that this will impose a significant financial burden on the Defendants, and the Court is willing to set conditions that will reduce that burden.  Furthermore, the expert's report may help drive the litigation to a conclusion, ultimately saving resources.  The parties shall

---

[3]  In the Court's preliminary view, the expert should be able to randomly examine meals that are served over a short period of time, determine the nutritional value of those meals, and then form an opinion whether serving similar meals would be sufficient to maintain health over the course of months or years.

**MEMORANDUM DECISION AND ORDER - 22**

respond to this notice at the same time that they nominate the names of potential experts.

In light of the uncertain time frame in which the expert will be nominated and appointed, the Court will stay this case.  The current dispositive motions deadline shall be vacated, and the only submissions that will be permitted while the case is stayed include the nomination of the expert and the response to the Court's notice of intent to impose costs.  To ensure that the case does not sit idle on the Court's docket, it shall also be administrative terminated.  Administrative termination is for internal Court purposes only, and it does not affect the substantive rights of any party.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

1.      Plaintiffs' Motion for a Temporary Restraining Order (Docket No. 104) is DENIED.

2.      Plaintiffs' Supplemental Motion for Leave of Court to Amend and Supplement Amended Complaint (Docket No. 106) is DENIED.

3.      Plaintiffs' Motion for Leave of Court to Amend/Supplement Complaint (Docket no. 127) is DENIED.

4.      Plaintiffs' Motion to Join Defendants (Docket No. 128) is GRANTED

in part and DENIED in part.  Food Service Manager Bud Johans shall

be substituted for Steve Feaster.  No other substitutions will be made.

5.      Defendant April Dawson's Motion for Summary Judgment (Docket

No. 143) is GRANTED.  All claims against April Dawson shall be

dismissed.

6.      Plaintiffs' "Fifth Issue" in their Amended Complaint, alleging that

IDOC Defendants have misused the Inmate Monetary Fund, is

DISMISSED for failure to state a claim upon which relief may be

granted.

7.      Plaintiffs' Motion for the Appointment of Neutral Experts (Docket

No. 123) is GRANTED.  No later than 30 days from the date of this

Order, the parties shall nominate the name of three experts in diet and

nutrition who have the necessary training and experience to address

the issues noted in this Memorandum Decision.  In lieu of submitting

the names of three experts, the parties may stipulate to an expert.  The

parties shall also submit proposed instructions to facilitate the process

and to guide the submission of the expert's report.  Within 30 days of

the date of this Order, the parties shall also indicate whether they

object to the imposition of the cost of the expert's reasonable

**MEMORANDUM DECISION AND ORDER - 24**

compensation on the Defendants.

8.      IT IS FURTHER ORDERED that these consolidated cases shall be

stayed pending the nomination and appointment of an expert, and the

submission of the expert's report.  The current dispositive motions

deadline is vacated.  Due to the uncertain length of the stay, the clerk

of court shall administratively terminate these cases.  Administrative

termination is for internal court purposes only, and the substantive

rights of the parties shall not be affected in any way.


DATED:  **February 20, 2009**



Honorable B. Lynn Winmill
Chief U. S. District Judge


**MEMORANDUM DECISION AND ORDER - 25**