UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PATRICK SMRZ and ROY BURSTEIN,<br><br>    Plaintiffs,<br><br>    v.<br><br>KATIE HALL, RANDY BLADES, BUD JOHANS, CARL BOYER, C. DEPPEN, TERRI ROSENTHAL, PAM SONNEN, et al.,<br><br>    Defendants. | Case No. 1:06-CV-0053-BLW<br>(lead case)<br>1:07-CV-00182-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Idaho state prisoners Patrick Smrz and Roy Burstein are the remaining plaintiffs in this consolidated prisoner civil rights action. Several motions are now pending before the Court, including Defendants' Motion to Dismiss for Failure to Exhaust Administrative Remedies (Dkt. 214), Defendants' Motion for Summary Judgment (Dkt. 218), and Plaintiffs' Motion for Default Judgment and/or Summary Judgment Against Defendants (Dkt. 217). In the interests of avoiding further delay, the Court shall resolve these matters on the parties' briefing and the record. D. Idaho L. Civil R. 7.1(d).

For the reasons set forth below, Plaintiff Burstein's remaining claims will be dismissed for failure to exhaust administrative remedies. Plaintiff Smrz's claim that

Defendants refused to comply with medically prescribed diets will also be dismissed for lack of exhaustion. Additionally, though Plaintiff Smrz properly exhausted a claim that Defendants failed to provide him with adequate food to maintain his health, there are no genuine issues of material fact as to that claim and Defendants are entitled to summary judgment.

## BACKGROUND

Dennis Orr and Patrick Smrz are the inmates at the Idaho State Correctional Institution (ISCI) who filed the original Complaint, raising numerous claims regarding the conditions of their confinement at ISCI. Gregory Nelson was later added as a third plaintiff. (Dkt. 62.)

The Court allowed Plaintiffs to proceed with the following claims: (1) IDOC officials and employees violated Plaintiffs' rights under the Eighth Amendment by (a) preparing and serving food under unsanitary conditions, and by (b) failing to provide food in sufficient quantity and with sufficient nutritional value to preserve the health of the inmates; (2) Dr. April Dawson of Correctional Medical Services (CMS) arbitrarily cancelled medical diets for inmates, and IDOC employees did not comply with medical diet directives; and (3) certain IDOC Defendants violated their fiduciary duties in using money that had been deposited in an "Inmate Management Fund." (Dkt. 26.)

The Court dismissed all other claims and denied Plaintiffs' request for class certification. (Dkt. 26.) The Court also ordered counsel for the IDOC Defendants and counsel for Dr. Dawson to conduct an investigation and to submit a joint "*Martinez*

report" in lieu of filing responsive pleadings or motions.[1] (Dkt. 26, pp. 8, 19.) Defendants complied with the Court's Order and filed their report, which described the food service system at ISCI, the handling of medical diet memos, and the structure of the Inmate Management Fund. (Dkts. 43, 44, and 45.) After the report was filed, Dennis Orr was permitted to withdraw as a plaintiff. (Dkt. 62.)

Inmate Roy Burstein then filed his own Complaint, which the Court consolidated with the present action. (Dkt. 55.) In his Complaint, Plaintiff Burstein alleged that Dr. Dawson prevented him from receiving a medical diet that had been prescribed by a different physician. (*Id.*) He also claimed that Warden Randy Blades and IDOC food service managers interfered with the medical diet he had been prescribed, worsening his medical conditions. (*Id.*)

In its February 20, 2009 Memorandum Decision and Order filed, the Court granted Defendant Dawson's Motion for Summary Judgment and also dismissed Plaintiffs' claim related to the Inmate Management Fund, leaving only the "food claims" to be resolved. (Dkt. 155, p. 24.) The Court determined that an expert could assist the parties and the Court in assessing the food claims, and it appointed Sue Stillman-Linja, a registered dietician, as a neutral expert. (Dkt. 190.) Ms. Stillman-Linja completed her investigation and submitted a report, concluding in her opinion that the food that is served on the various meal plans at ISCI is nutritionally adequate to the health of the inmates, and that it is served under sanitary conditions. (Dkt. 195, pp. 4, 9-11.) After her report was filed,

---

[1] *Martinez v. Aaron*, 570 F.2d 317, 318-19 (10th Cir. 1978).

**ORDER - 3**

Plaintiff Nelson stipulated with Defendants that all of his claims could be dismissed with prejudice. (Dkt. 198.) Only Plaintiffs Smrz and Burstein remain as plaintiffs.

Given the protracted nature of the initial stages of this case, the IDOC Defendants have only recently filed their Answers. (Dkts. 212, 213.) Defendants have also filed two dispositive motions: a Motion to Dismiss, based on the alleged failure of Plaintiffs Burstein and Smrz to exhaust administrative remedies before filing their Complaints, and a Motion for Summary Judgment. (Dkts. 214, 218.) Plaintiffs have submitted their own dispositive motion, which they have labeled as a "Motion for Default Judgment and/or Summary Judgment against Defendants." (Dkt. 217.)

The Court has reviewed these matters and is now prepared to issue its ruling.

## MOTION TO DISMISS

**1. The Exhaustion Requirement**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). This requirement is intended to give "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id*. at 204.

Proper exhaustion is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules,

including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

A claim that a prisoner failed to exhaust administrative remedies is an affirmative defense that should be brought as an unenumerated motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2002). The defendants bear the burden of raising and proving the absence of exhaustion, *Brown*, 422 F.3d at 936-37, and the defense may be raised by motion after an answer is filed, so long as the defense has been pled in the answer. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 216 F.3d 764, 788 (9th Cir. 2000) ("The inclusion of the defense in an answer is sufficient to preserve the defense.").

In resolving a motion to dismiss on exhaustion grounds, the district court may consider matters outside of the pleadings and can resolve disputed issues of fact, if necessary. *Id*.

### 2. IDOC's Administrative Review Process

According to IDOC's established administrative review procedure, a prisoner must attempt to resolve any problem related to his incarceration internally using the prison's grievance system. (Dkt. 214-2, Ex. A.)

The prisoner begins this process by routing a concern form to the staff member

most capable of addressing the problem. (Dkt. 214-2, Affidavit of Jill Whittington, ¶ 5.) If the issue is not resolved, the prisoner must then complete a grievance form, attach a copy of the concern form, and file the grievance. (*Id*. at ¶ 6.) The "grievance coordinator" at the prison logs the grievance into the system, and, if the grievance is properly completed, will forward it to the "reviewing authority," usually the deputy warden, who reviews the prisoner's complaint and issues a decision. (*Id*. at ¶ 7.) Until 2007, the grievance coordinator was not required to log unprocessed grievances–that is, grievances that were not filled out and submitted in compliance with applicable rules–but since that time the grievance coordinator logs both processed and unprocessed grievances. (Id. at ¶ 12.)

If the prisoner is dissatisfied with the reviewing authority's decision, he may then appeal to the "appellate authority," which is the warden for conditions of confinement claims or CMS's regional administrator for medical grievances. (*Id*. at ¶ 8. 9.) Once the appellate authority issues its decision, the grievance is then routed back to the inmate, thus concluding the administrative review process. (*Id*. at ¶ 10.)

3.  Discussion

    (a) Roy Burstein

Jill Whittington, the grievance coordinator at ISCI, has submitted an affidavit in support of Defendants' Motion to Dismiss in which she asserts that she has found no record of any completed grievances on any subject submitted by Plaintiff Burstein in the two years before he filed his Complaint, which is the time span that falls within the statute of limitations. Plaintiff Burstein does not appear to dispute the substance of Ms.

**ORDER - 6**

Whittington's affidavit. Instead, he counters that he has "exhaustively" submitted proof of his claims to the Court, but this response does not address Defendants' argument that he never presented his complaints to *prison officials* through the grievance system. Plaintiff alternatively contends that an administrative procedure does not exist for raising claims that IDOC and CMA were "acting in concert." (Dkt. 216, p. 2.) This is incorrect; all complaints about conditions of confinement and medical care can be grieved, and the grievance coordinator is responsible for routing properly completed grievances and appeals to the appropriate reviewing officials, depending on the nature of the complaint.

Plaintiff has also requested an extension of time to supplement his response with "factual proof," and he seeks an order from the Court requiring the disclosure of certain records. (Dkts. 223, 224, 225). These requests will be denied as lacking in good cause. The records that Plaintiff seeks are medical records in the possession of CMS, which is not a party to this case, and, in any event, his request is directed at developing evidence on the merits of his medical claims rather than assisting him in showing whether he exhausted his administrative remedies. Moreover, the additional time that Plaintiff originally requested to prepare a supplemental response on the exhaustion issue has long since passed without a submission or an offer of proof outlining the nature of the evidence that he wished to present.

Accordingly, the Court concludes that Defendants have carried their burden to prove that Plaintiff Burstein did not exhaust his administrative remedies before filing suit, and his remaining claims will be dismissed, without prejudice, for lack of exhaustion.

**ORDER - 7**

### (b) Patrick Smrz

Ms. Whittington has found four grievances submitted by Plaintiff Smrz during the relevant time period, but he did not complete the administrative review process by appealing two of these grievances, and they may be disregarded. (Whittington Aff. ¶ 14.) Plaintiff did complete an appeal for a third grievance, but he raised unrelated issues about the lack of treatment for skin cancer. (Dkt. 214-3, Exhibit E.)

In the fourth grievance, Plaintiff included concerns about the meal service at ISCI:

> The menu specifies 3/4 cup (6) oz, whole scrambled eggs w/ cheese 2/3 cup hash brown (5) oz. #6 scoop. Baked potatoe [sic] not mashed which has extra nutrients (note) #8 scoop + #6 scoop = 3/4 eggs.

(Dkt. 214-3, Exhibit D.)

In a concern form that was attached to the grievance, he added the following facts:

> on 11-26-05 I received mash potatoes instead of baked third month in a row. 11-27-05 I received a #8 scoop of eggs and a #8 scoop of potatoes powdered milk instead of whole and only 1/2 piece of coffe[e] cake.

(Dkt. 214-3, Exhibit D.) IDOC officials thanked for Plaintiff for his assistance in raising these matters and noted that the problems should have been corrected. (*Id.*) A copy of a memorandum that highlighted changes to the weekend meal service was attached. (*Id.*)

Defendants argue that this grievance did not exhaust any claim related to the food service at ISCI. Defendants' argument is too broad.

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*

*v. Bock*, 549 U.S. at 218. IDOC policy requires prisoners to "be specific as to the complaint, dates, places, personnel involved, and how the complaining offender has been affected." (Dkt. 214-2, p. 11.)

The Court agrees with Defendants to the limited extent that Plaintiff failed to exhaust a claim that certain unnamed personnel arbitrarily cancelled his medical prescription for a high fiber diet because he clearly did not complain about that issue in this grievance.[2] But the grievance clearly shows that Plaintiff was concerned at least about a meal that did not comply with IDOC's posted menu, particularly regarding the quantity of food that was required, and that incorrect food substitutions and diminished quantity had occurred for three months in a row. IDOC employees and officials were obviously aware of ongoing problems in this respect, as reflected by the memorandum illustrating the changes that the food service manager had implemented. The Court therefore concludes that Plaintiff Smrz properly exhausted a claim that the prison was not providing him with sufficient food to maintain his health.

The Court now moves to Defendants' Motion for Summary Judgment over this claim.

## MOTION FOR SUMMARY JUDGMENT

### 1. Summary Judgment Standard

Summary judgment is appropriate where a party can show that, as to any claim or

---

[2] The Court also notes that Plaintiff did not contest Defendant Dawson's Motion for Summary Judgment over this claim, and he has come forward with no evidence showing that any named IDOC Defendant was responsible for cancelling the diet.

ORDER - 9

defense, there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(1)(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. *See id.* at 248.

The moving party is entitled to summary judgment if that party shows that each issue of material fact is not or cannot be disputed. To show the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the materials cited do not establish the presence of a genuine dispute, or that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)&(B); *see T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 322). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(1)(c)(3).

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(2). Affidavits or declarations submitted in support of or opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(4).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. All inferences which can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted).

Rule 56(e) authorizes the Court to grant summary judgment for the moving party "if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it." The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

### 2. Eighth Amendment Standards

The Eighth Amendment requires that prison officials "must take care that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (citations omitted). To state a claim under the Eighth Amendment, a prisoner must show that officials were deliberately indifferent to his basic needs. *Id*. at 837. Deliberate

ORDER - 11

indifference exists when an official knows of and disregards a substantial risk of serious harm, or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Id.*

Once these basic needs are met, the Constitution "does not mandate comfortable prisons,"*see Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), and prisoners do not have a right to food that is aesthetically pleasing or especially flavorful. *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993). Rather, prison food need only be minimally "adequate to maintain health." *LeMaire*, 12 F.3d at 1456; *see also Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("[t]he fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation.").

### 3. Discussion

In his Amended Complaint, Plaintiff alleged that the food that prison officials provide to inmates is "nutritionally unbalanced and inadequate" and is "causing current and ongoing harm to the health of the plaintiffs with future harm being assured." (Dkt. 24, p. 8.) Plaintiff also alleged that food is served in unsanitary conditions and that portions are cut. (*Id*. at 9.) Defendants initially responded to these claims in their *Martinez* Report by setting forth in great detail the policies and practices governing the food service at IDOC, including the various meal plans that are in place and the nutritional value of the food on the plans. (Dkts. 43, 44.)

The Court has previously noted that, "given the state of the law and the

information that the Defendants provided in their *Martinez* Report, it seems unlikely that a facial challenge to the IDOC's meal plans would have merit." (Dkt. 155, p. 20.) The Court recognized that the essence of the claim was instead that "the quantity of food prescribed by those plans is often so diminished when it is served, and non-nutritious items are substituted to such a degree, that the food that the prison provides to [inmates] is not adequate to maintain their health over time." (*Id.*) As a result, the Court appointed Ms. Stillman-Linja to give an opinion on "whether the nutritional value of the food that is served to the inmates on the different meal plans at the Idaho State Correctional Institution, and the conditions under which the food is served, are 'adequate to maintain health.'" (Dkt. 190, p. 5.)

Ms. Stillman-Linja reviewed extensive documentation and conducted an onsite visit to ISCI. (Dkt. 195, pp. 7-8.) Based on her experience as a registered dietician with expertise in food service in institutional settings, she concluded:

> [T]he food served to the inmates at the Idaho State Correctional is nutritionally adequate to maintain health. This is true for inmates on regular diets and other types of therapeutic diets served at [ISCI]. It is also the opinion of this writer that the food is served under sanitary conditions and that the health and safety of inmates at [ISCI] is not jeopardized.

(Dkt. 195, p. 4.)

Relying largely on the expert's opinion, Defendants contend that there is no genuine issue of material fact as to whether the food that is served to Plaintiff is adequate to maintain his health. Although Plaintiff did not file a response to Defendants' Motion, the Court has independently reviewed the record and agrees that there is not sufficient

ORDER - 13

evidence to support a jury finding that Defendants were aware of and disregarded a substantial risk of serious harm to Plaintiff's health based on the quality or quantity of food.[3]

Defendants do not appear to seriously dispute that ISCI encountered sporadic problems in the implementation of food service in the past, which involved occasional shortages and some sanitation issues. (Dkts. 43-4, Affidavit of Keith Yordy, ¶ 11, 21, 32; Dkt. 43-4, Affidavit of Bud Johans, ¶¶ 25-32.) It is equally apparent, however, that Defendants have attempted to remedy those problems. After an audit exposed some of these issues, a different food service manager was hired in 2006, who instituted new policies and procedures. (Yordy Aff., ¶ 36; Johans Aff. ¶¶ 25-32.) Defendants admit that portion sizes were reduced, but that the reduction was due to inmates previously receiving food in excess of the posted menu plan, and that inmates on the "mainline" or standard diet should now receive 2,850 - 2,950 calories per day, which complies with guidelines set by the United States Department of Agriculture. (Dkt. 44, Affidavit of Katie Hall, ¶¶ 24, 33-35.) Ms. Stillman-Linja's report corroborates many of these assertions, and she concludes that current practices are adequate. (Dkt. 195, p. 4.)

Throughout this case, the inmates have focused on what they perceive to be smaller portions and less nutritious substitutions at mealtimes, but there is no evidence

---

[3] Regarding the lack of a response from Plaintiff, the Court notes that Plaintiff Burstein purported to represent both himself and Plaintiff Smrz when he requested an extension of time to respond to Defendants' Motion for Summary Judgment, but Plaintiff Smrz did not sign those Motions. (Dkts. 223, 225.) At any rare, the requested deadline has long since passed without any type of response or even a proffer from either Plaintiff.

**ORDER - 14**

that they have been deprived of basic food that satisfies their caloric and nutritional needs over the long term. Indeed, Plaintiff Smrz has alleged no specific facts showing that he has been harmed by the quantity or quality of the food that has been served to him—such as severe weight loss or illness—or that a substantial risk of harm exists. *See*, *e.g.*, *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir.1999) (suggesting that, to state Eighth Amendment claim, an inmate must allege "he lost weight or suffered other adverse physical effects or was denied a nutritionally and calorically adequate diet.")

Because there is no genuine issue of material fact as to whether Defendants have been deliberately indifferent to Plaintiff Smrz's basic need for nutritional food that is served under sanitary conditions, Defendants are entitled to judgment as a matter of law. For the same reason, Plaintiff's Motion for Default Judgment and/or Summary Judgment against Defendants will be denied.

## CONCLUSION

The Court grants Defendants' Motion to Dismiss as to Plaintiff Burstein's remaining claims based on a lack of exhaustion, and those claims are dismissed without prejudice. The Court grants Defendants' Motion to Dismiss as to Plaintiff Smrz's claim that IDOC personnel cancelled or failed to follow his medically prescribed diet, and that claim is dismissed. The Court denies the Motion to Dismiss with respect to Plaintiff Smrz's claim that IDOC Defendants failed to provide him with adequate food, but the Court grants Defendants' Motion for Summary Judgment over that claim.

# ORDER

IT IS ORDERED:

1. Plaintiffs' Motion for Extension of Time (Dkt. 223), Affidavit and Renewed Motion to Compel (Dkt. 224), and Request for Extension of Time (Dkt. 225) are DENIED.

2. Defendants' Motion to Dismiss for Failure to Exhaust Administrative Remedies (Dkt. 214) is GRANTED in part and DENIED in part, as set forth herein.

3. Defendants' Motion for Summary Judgment (Dkt. 218) is GRANTED as to Plaintiff's Smrz's remaining claim that IDOC Defendants failed to provide him with sufficiently nutritious food to maintain his health.

4. Plaintiffs' Motion for Default Judgment and/or Summary Judgment against Defendants (Dkt. 217) is DENIED.

5. There being no claims remaining, the case is DISMISSED in its entirety.

DATED: **February 23, 2011**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge